UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NEAL MORRIS                                    CIVIL ACTION

V.                                             NO. 18-2624

CITY OF NEW ORLEANS                            SECTION "F"

ORDER AND REASONS

Before the Court are two motions: (1) the defendant's Rule 12(b)(6) motion to dismiss; and (2) the plaintiff's motion to strike the defendant's supplemental memorandum in support of its motion to dismiss.  For the reasons that follow, the plaintiff's motion to strike is GRANTED, and the defendant's motion to dismiss is GRANTED in part, as to the plaintiff's "class of one" Equal Protection claim under the Fourteenth Amendment, and DENIED in part, as to the plaintiff's pled claim that the City's Comprehensive Zoning Ordinance, § 21.6.V, constitutes an unconstitutional content-based regulation and prior restraint of speech in violation of the First Amendment.

**Background**

This civil rights lawsuit challenges the constitutionality of the City's murals-permit scheme, which regulates the installation of artwork on all private property throughout the City of New Orleans.

Neal Morris lives in Orleans Parish, where he owns residential and commercial properties.  In late 2017, seeking information

concerning the City's murals permit process and the criteria used to determine approval, Morris visited New Orleans City Hall. No City employee gave him the information he requested. Nevertheless, on November 4, 2017, Morris commissioned a local artist to paint a mural on a commercial property he owns at 3521 South Liberty Street. The mural quotes a comment made by President Donald Trump, recorded in a 2005 "Access Hollywood" segment; the mural replaces with pictograms two vulgar words used by Trump.

Just a few days after the mural was painted, a local news outlet publicized a story about the mural and noted that murals "are typically regulated by the Historic District Landmarks Commission and the City Council." The same day the news story was published, on November 8, 2017, the City of New Orleans Department of Safety and Permits sent Morris a letter advising him that the mural violated a zoning ordinance. Specifically, Jennifer Cecil, the purported director of the City's "One Stop for Permits and Licenses," wrote that an inspection of the property on November 8 revealed a violation of Section 12.2.4(8) of the Comprehensive Zoning Ordinance, which, according to the letter, concerns "Prohibited Signs—Historic District." Ms. Cecil described the violation:

> The mural on the building on this property is not allowed in that the property is zoned residentially and murals shall not be permitted in any residentially zoned historic district.

Morris was told to remove the mural, and warned that his failure

to do so by November 22, 2017

> will cause the Department of Safety and
> Permits to initiate appropriate legal action
> to secure compliance. The penalty for failure
> to comply is a maximum fine or jail for each
> and every day the violation continues plus
> court cost as prescribed by law.

Ms. Cecil said Morris should contact her once the mural was removed

so that she could re-inspect the property.

Morris discovered several inaccuracies in the November 8

letter: Section 12.2.4(8) does not exist; there is no section

titled "Prohibited Signs—Historic District" in the CZO; nor does

the CZO contain a blanket prohibition on murals in residentially

zoned historic districts. On November 17, 2017, Morris wrote to

the City requesting clarification in light of his discovery of the

inaccuracies in Ms. Cecil's letter.[1] The City did not respond.

Fearing prosecution, Morris sued the City on March 13, 2018,

alleging that the "murals-permit scheme (Comprehensive Zoning

---

[1] At the conclusion of his letter to the City, Morris wrote:

> Can you tell me whether my artwork is a mural
> or a sign under the CZO, and can you explain
> how this determination is made?
>
> Again, I am attempting to comply with the
> City's zoning regulations, but I cannot tell
> from the letter I received what the alleged
> zoning violation is. I would appreciate your
> clarification.

Ordinance § 216.V et seq. and Municipal Code § 134-78A et seq.)"
violate his First and Fourteenth Amendment rights.[2] His complaint
alleges that: (1) the City's requirement that property owners
obtain advance government approval before receiving a mural
permit, or face criminal punishment, subjects him and other
property owners to an unconstitutional prior restraint on speech
where approval or denial of a permit is left to the unfettered
discretion of City officials; (2) the City's murals-permit process
is an unconstitutional, content-based restriction on speech
insofar as an applicant must pay a $500 fee and must submit a
drawing, which will be subject to the City's "acceptability" review
before a mural is approved;[3] (3) the City's murals-permit process
violates Morris' and other property owners' due process rights by
subjecting their artistic expression to prior review, indefinite
in duration, by unspecified officials using vague, overbroad, or
nonexistent standards;[4] and (4) the City engages in selective

---

[2] Section 216.V of the New Orleans Comprehensive Zoning Ordinance does not exist.  Morris intended to refer to Section 21.6.V, which is entitled "Murals."

[3] Morris complains that "signs" are subject to a distinct regulatory scheme, and that some signs are exempt from the permit requirements, whereas no murals are exempt from the permit requirement.

[4] According to the allegations of the complaint, the Municipal Code and CZO provide that mural applications are reviewed by at least three City departments: the City Planning Commission, the Design Advisory Committee, and the Board of Murals Review, with ultimate approval left to the City Council.  Although the Code and CZO reference a "Board of Murals Review," its authority, guidelines, procedures, membership, and governance are not defined.  It is

enforcement of its mural regulations in violation of the Equal Protection Clause.[5] Morris' complaint requests:

- A preliminary (and ultimately permanent) injunction barring the City from enforcing the murals-permit scheme, Comprehensive Zoning Ordinance §21.6.V et seq. and Municipal Code § 134-78A et seq.

- A declaratory judgment that the City's actions, policies, and procedures embodied in the murals-permit scheme are unconstitutional violations of the plaintiff's rights under the First Amendment, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution.

- Reasonable attorney's fees, expenses, and costs under 42 U.S.C. § 1988.

About two months after Morris filed suit, on May 24, 2018, the New Orleans City Council enacted M.C.S., Ordinance No. 27783, which removed Sections 134-78A and 134-78B from the Municipal Code. As a result, the City's murals-permitting scheme is now found only

---

alleged that there are no standards or timeline specified for any of these departments or for the process itself. An opaque process with no defined standards, officials, timeline, or purpose, Morris alleges, renders him without notice of the substantive violations and procedural regulations that he breached and is breaching and for which he faces criminal sanctions.

[5] For example, Morris singles out a mural by artist Yoko Ono, which was painted on November 15, 2017 on the Ogden Museum, without a permit and without being cited for a zoning violation for the mural.

at CZO Section 21.6.V.[6]  In addition, the City agreed that it would not enforce its murals-permitting scheme against Mr. Morris for existing murals on his property, or any additional murals painted on any of his properties, during the pendency of this lawsuit.  In light of the City's non-enforcement pledge, this Court, in its Order and Reasons dated May 31, 2018, denied as moot Mr. Morris' motion for preliminary injunctive relief.

Then, on June 6, 2018, the City moved to dismiss the plaintiff's claims under Rule 12(b)(6) on the grounds that its murals-permitting scheme, now located only at CZO Section 21.6.V, is facially constitutional as a valid time, place, and manner restriction, and that the plaintiff's due process and equal protection claims are without merit.  Morris filed an opposition to the motion to dismiss on June 19, 2018, and the City was granted leave to file a reply on June 27, 2018.

About a month later, on August 2, 2018, the City was granted leave to file a supplemental memorandum in support of its motion to dismiss.  In this paper, the City informs the Court that Morris "appears" to have violated his agreement with the City.[7]  In

---

[6] Because the City has repealed Sections 134-78A and 134-78B of the Municipal Code, the Court does not consider Morris' challenges respecting these provisions, including his allegations concerning the "murals review board."  See McCorvey v. Hill, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed.").

[7] The City notes that, in a good faith attempt to resolve this case, the parties stipulated that the City would not take

response, Morris moved to strike the City's supplemental memorandum under Federal Rule of Civil Procedure 12(f)(2), contending that this pleading was untimely filed, is legally irrelevant to the pending motion, and was submitted solely to prejudice him.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an

---

enforcement action against the plaintiff's murals and that the plaintiff would give the City notice prior to erecting any new mural. The City further submits that Morris has erected numerous murals throughout the City without giving prior notice and that many of these murals are in violation of the CZO and the Historic District Landmark Commission's Guidelines. Finally, the City relates that the plaintiff has formed the "Nola Mural Project" in an effort to "defy New Orleans ordinances."

unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." <u>See</u> <u>Thompson v. City of Waco, Texas</u>, 764 F.3d 500, 502 (5th Cir. 2014) (citing <u>Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys</u>, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. <u>Id.</u> at 502-03 (citing <u>Iqbal</u>, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009)(quoting <u>Iqbal</u>, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

                                II.

     As a threshold matter, the Court addresses Morris' motion to strike the City's supplemental memorandum in support of its motion to dismiss. This challenged pleading contains extraneous allegations regarding Morris' purported violation of his "agreement" with the City. In particular, the City informs the Court that Morris agreed to give the City notice prior to erecting any new mural and that he has erected additional murals without providing such notice. The City also relates that Morris has formed the "Nola Mural Project" in an effort to "defy New Orleans ordinances." While such conduct might seem to some as contemptuous and immature, the Court may only rely on factual allegations contained within the plaintiff's complaint when deciding a Rule

12(b)(6) motion to dismiss, so it may not consider this submission.[8] Accordingly, the plaintiff's motion to strike the City's supplemental memorandum is granted.

III.

The Court next considers whether the plaintiff has standing to prosecute this lawsuit. In its motion to dismiss, the City contends that the plaintiff lacks standing because he has failed to establish that he has suffered an injury-in-fact. The City submits that the plaintiff has paid no "fees," did not even apply for a permit, and will not have to take down his murals or pay a fine for failing to do so, in light of the City's pledge to stay enforcement against his murals during the pendency of this lawsuit.

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) ("The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."). Three elements comprise the "irreducible constitutional minimum" for standing:

---

[8] On a 12(b)(6) motion to dismiss, the Court may only rely on "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011) (quoting Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008)). The Court takes judicial notice of the conduct of all parties to this litigation.

> A plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Env'l Services (TOC), Inc., 528 U.S. 167, 185 (2000)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

Morris alleges that by installing a mural on his property, he engaged in activity that is protected by the First Amendment, and the City sought to curtail that activity. He further alleges that he seeks to continue expressing his rights under the First Amendment by installing additional murals. Accordingly, Morris seeks an injunction against the enforcement of the City's ordinance requiring a permit for his murals, a declaratory judgment that this scheme is unconstitutional, and reasonable attorneys' fees, expenses, and costs. Because Morris seeks to redress the threatened enforcement of an allegedly unconstitutional law, he clearly has standing.[9] The City's pledge to stay enforcement of the permit scheme against the plaintiff's murals during the

---

[9] See Susan B. Anthony List v. Driehaus, 573 U.S. _____, 8 (2014) ("One recurring issue in our cases is determining when the threatened enforcement of a law creates an Article III injury . . . . We have permitted preenforcement review under circumstances that render the threatened enforcement sufficiently imminent.").

pendency of this lawsuit only rendered moot his request for preliminary injunctive relief.[10]

IV.

Morris complains that the City's murals-permit scheme violates the First Amendment as (1) a content-based regulation of speech and (2) a prior restraint on speech.

*A.*

The First Amendment, applicable to the states through the Fourteenth Amendment, instructs that a state "shall make no law . . . abridging the freedom of speech[.]"  U.S. Const. amend. I; XIV.  Murals are artwork, which has long been held to be expression protected by the First Amendment.  Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557, 569, 574 (1995)(noting that "the Constitution looks beyond written or spoken words as mediums of expression," and that "the . . . painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll [are] unquestionably shielded" by the First Amendment); White v. City of Sparks, 500 F.3d 953, 956 (9th Cir. 2007)(holding that plaintiff's "self-expression through painting constitutes expression protected by the First

---

[10]  See City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 289 (1982) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.").

Amendment"); <u>ETW Corp. v. Jireh Pub., Inc.</u>, 332 F.3d 915, 924 (6th Cir. 2003)("The protection of the First Amendment is not limited to written or spoken words, but includes other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures."); <u>Bery v. City of New York</u>, 97 F.3d 689, 695 (2d Cir. 1995)("Visual art is as wide ranging in its depiction of  ideas, concepts and emotions as any book, treatise, pamphlet or other writing, and is similarly entitled to full First Amendment protection.").

<em>B.</em>

To evaluate the constitutionality of a municipal ordinance that regulates a form of expression, a court must first determine whether the regulation is content-based or content-neutral and then apply the appropriate level of scrutiny.  See <u>Reed v. Town of Gilbert, Ariz.</u>, 135 S. Ct. 2218, 2226 (2015).  "Content-based laws – those that target speech based on its communicative content – are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."  <u>Id.</u>  (citations omitted).  The Supreme Court has emphasized that there are two different categories of content-based regulations.  See <u>id.</u> at 2227.  First, a regulation of speech is "content based" where the law "'on its face' draws distinctions based on the message the speaker conveys."  <u>Id.</u>  (citations omitted).  A facial distinction based on message

may be obvious, "defining regulated speech by particular subject matter," or subtle, "defining regulated speech by its function or purpose." Id. In either case, the regulation "is subject to strict scrutiny regardless of the government's benign motive or content-neutral justification." Id. at 2228.[11] Alternatively, a content-based regulation exists where a statute is facially neutral but "cannot be 'justified without reference to the content of the regulated speech,' or [was] adopted by the government 'because of disagreement with the message [the speech] conveys.'" Id. at 2227 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)). Accordingly, "strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based." Id. at 2228.

On the other hand, a content-neutral regulation of speech is subject to what the high court calls the time, place, and manner test. See Ward, 491 U.S. at 791. Such regulations are constitutional provided "that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Id.

---

[11] "'The vice of content-based legislation . . . is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes.'" Id. at 1229(quoting Hill v. Colorado, 530 U.S. 703, 743 (Scalia, J., dissenting)).

Morris alleges that the murals-permit scheme is an unconstitutional content-based regulation of speech in two ways: (1) "murals" are regulated differently from "signs" based on their content; and (2) murals are subjected to "acceptability" review based on their content.

Morris first alleges that § 21.6.V is a content-based regulation because it subjects murals to a regulatory framework based on their content.[12] The plaintiff also alleges that § 21.6.V is an unconstitutional content-based regulation because it subjects murals to "acceptability" review based on their content and gives City officials unfettered discretion to approve or disapprove a permit. To support this allegation, the plaintiff points to CZO § 21.6.V.2(b), which requires an applicant to submit a "general drawing and written description of the type of mural" along with his permit application.

In its motion to dismiss, the City contends that the plaintiff's complaint "intentionally left out" part of the drawing submittal requirement. Section 21.6.V.2(b) provides in full: "General drawing and written description of the type of mural (painted, mosaic, etc)." The City declares that it is simply attempting to determine the type of mural insofar as the medium

---

[12] The plaintiff notes that "murals" are regulated pursuant to § 21.6.V of the CZO, while "signs" are regulated under Article 24 of the CZO. Because murals are artwork, and a form of expression, the Court does not reach the distinction between murals and signs.

used and that the contents of a mural are not reviewed.  It further submits that the standards of approval do not even contemplate the contents of a mural, but rather, seek to ensure that the historic fabric of the City remains intact and that the health, safety, and welfare of the public are maintained.[13]

The Court turns to the provisions of the CZO regarding murals to determine whether their plain language allows for content review.  Section 21.6.V.1(a), entitled "Application," provides:

> No person, firm, or corporation may commence a mural installation on a site without development plan and design review approval by the Executive Director of the City Planning Commission and the Design Advisory Committee in accordance with Section 4.5.  A separate application is required for each mural on a site.

According to § 21.6.V.1(a), the process for approving murals permits is located in § 4.5, entitled "Development Plan and Design Review."  Two subsections of § 4.5 – namely, those discussing its purpose and approval standards – are relevant in determining whether the content of murals is considered in the review process. First, § 4.5A sets forth the "purpose" of the development plan and design review process as follows:

> The development plan and design review process is intended to promote orderly development and redevelopment in the City and to assure that such development or redevelopment occurs in a

---

[13] The City's response seems to be an effort to say the "narrowly tailored" issue has been addressed.

manner that is harmonious with surrounding
properties and neighborhoods, is consistent
with the Master Plan, and promotes the general
welfare of the City. This section provides
standards by which to determine and control
the physical layout and design to:

1.  Ensure compatibility of land uses and
structures.
2.  Protect and enhance community property
values.
3.  Ensure the efficient use of land.
4.  Minimize traffic and safety hazards.
5.  Ensure efficient parking layout.
6.  Minimize environmental impacts.
7.  Incorporate proper stormwater management
and sustainable design techniques.

In addition, § 4.5E contains "approval standards" designed to

guide City Officials during the review process.  Section 4.5E

provides in pertinent part:

In reviewing site plan and design review
applications, the relationship of the
development plan to adopted land use policies
and the goals and objectives of the Master
Plan shall be evaluated.  In addition, the
following characteristics shall be
considered:

1.  Degree of conformity with the regulations
of this Ordinance.
2.  Degree of conformity with all applicable
regulations within the City Code, and the
goals and policies of the Master Plan.
3.  The location, arrangement, size, design,
and general site compatibility of buildings,
lighting, and signs, including:
     a.  Compatibility with, and mitigation
of, any potential impact upon, adjacent
property.

b. Site illumination designed and installed to minimize adverse impact on adjacent properties.

c. Signs in accordance with Article 24.

. . .

6. Building design that enhances the design quality and character of the surrounding community through strategies such as:

a. Maintaining existing development patterns reflected in the intent of the Master Plan or other adopted plans, or reflecting changes proposed within the Master Plan or other adopted plans.

b. Providing a visible transition in height and bulk between higher and lower density development.

c. Reinforcing the prevailing orientation to the street.

d. Strengthening the character of walkable streets, intact residential neighborhoods, and other environments for which this prevailing character reflects the urban design goals of the Master Plan.

e. Respecting historic design context.

Returning to § 21.6.V of the CZO, which contains provisions devoted exclusively to murals, § 21.6.V.2 sets forth "required submittals" for a murals permit application as follows:

a. Building elevation drawn to scale that identifies:
i. The façade on which the mural is proposed.
ii. The location of existing and proposed murals.
iii. The mural dimensions.
iv. The height of the mural above grade.
v. The building eave/cornice and roofline.
b. General drawing and written description of the type of mural (painted, mosaic, etc).

c.  If the mural is not painted directly on a wall surface, details showing how the mural is affixed to the wall surface.

Finally, "standards" for murals are located in § 21.6.V.3, which provides:

a.  Murals are considered public art. Murals are not permitted to advertise any product, service or brand.  No off-premise advertising is permitted.  Non-commercial messages are permitted.
b.  Mural areas will not be painted on or obscure architectural features such as windows, doors (other than egress-only), pilasters, cornices, signs required by the City Code, or other building trim, feature bands, and other recessed or projecting features.
c.  Murals with any element that weighs more than seven (7) pounds per square foot, or in total weighs more than four-hundred (400) pounds require structural review and approval from the Director of the Department of Safety and Permits.
d.  Building owners are responsible for ensuring that a permitted mural is maintained in good condition and is repaired in the case of vandalism or accidental destruction.
e.  Muralists and building owners are encouraged to use protective clear top coatings, cleanable surfaces, and/or other measures that will discourage vandalism or facilitate easier and cheaper repair of the mural if needed.

When these provisions are read together, the CZO requires an applicant to submit a general drawing of his mural for development plan and design review approval by the Executive Director of the City Planning Commission and the Design Advisory Committee.  The purpose of the review process is to assure that the proposed

development is "harmonious with surrounding properties and neighborhoods" and "promotes the general welfare of the City." In reviewing an application, City officials must consider whether the proposed design is compatible with adjacent property and "enhances the design quality and character of the surrounding community," such as by "strengthening the character" of streets and neighborhoods and "respecting historic design context." Finally, the CZO designates "standards" for murals, indicating that murals may only include non-commercial messages, may not be painted on or obscure architectural features like windows or doors, may not weigh more than a certain amount without structural review and approval, and must be maintained in good condition by the building owner.

Accordingly, a plain reading of the CZO reveals that the "development plan and design review approval" process involves a review of the content of proposed murals. Because applicants are required to submit a general drawing of their proposal mural for "development plan and design review approval," it cannot reasonably be said that City officials do not consider content when determining whether to approve or deny a permit. The stated purpose of the design review and approval process and standards for approval further lend support to this conclusion. Indeed, City officials cannot determine whether a mural's design "enhances the quality and character of the surrounding community," "strengthen[s] the character" of streets and neighborhoods, or

"respect[s] historical design context" without evaluating the content of the proposed mural. Although the CZO sets forth "standards" for murals regarding placement, weight, and condition, these standards do not eliminate City officials' ability to review content. Moreover, notably absent from the CZO is a disclaimer that content shall *not* be considered. Ultimately, because the drawing submittal requirement cannot be justified by a purpose other than intended content review, the Court finds that the plaintiff has plausibly alleged that the murals permit application process constitutes a content-based regulation of speech.

This determination implicates strict scrutiny, which requires the City "to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Reed, 135 S.Ct. at 2227. In his complaint, the plaintiff alleges:

> The City has no compelling interest in preventing Plaintiff and other property owners from commissioning, painting, or installing murals on their own properties. Even if the City had a compelling interest in regulating murals on private property, its regulatory scheme is not so narrowly tailored that no less restrictive measure would satisfy that purported interest.

As indicated by the stated "purpose" for the City's development plan and design review process, the regulation primarily is intended to preserve the City's aesthetic appeal and advance traffic safety. The plaintiff contends in his opposition papers

that these interests are not compelling.  He further submits that the regulation is not narrowly tailored because it is overinclusive, as it applies throughout the City and is not limited to historically designated homes or neighborhoods.  Finally, the plaintiff contends that the City could protect its interests through less restrictive means, such as by citing property owners with zoning violations after they occur, rather than engaging in advanced review coupled with extensive paperwork and submission requirements.  Assuming for the purpose of argument, as did the Supreme Court in Reed v. Town of Gilbert, Ariz., 135 S. Ct. 2218, 2231 (2015), that the interests of preserving aesthetic appeal and promoting traffic safety are compelling, Reed arguably instructs that the plaintiff has plausibly alleged that the advanced content review process is not narrowly tailored to advance these interests.  See id. ("[The Town] has offered only two governmental interests in support of the distinctions the Sign Code draws: preserving the Town's aesthetic appeal and traffic safety.  Assuming for the sake of argument that those are compelling governmental interests, the Code's distinctions fail as hopelessly underinclusive.").[14]  Accordingly, Reed mandates a finding that the plaintiff has pleaded

---

[14] At best, the appellate literature, dominated by little more than empty platitudes, seems to say that a review of artwork may never survive strict scrutiny.  Municipalities are given little guidance.

a claim that § 21.6.V is an unconstitutional content-based regulation of speech.[15] 9

*C.*

The Court next considers whether Morris alleged sufficient facts to state a claim that § 21.6.V is an unconstitutional prior restraint of speech under the First Amendment. Morris alleges that this section requires individuals to obtain development plan and design review approval before installing a mural on their property and that City officials have unfettered discretion to approve or deny a permit.

The case literature is not particularly friendly to the City's arguments. Although prior restraints on speech are not per se unconstitutional, the Supreme Court has consistently held that any system of prior restraint bears a heavy presumption of unconstitutionality. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225 (1990) (citations omitted). Nonetheless, the Fifth Circuit has recognized, and this Court agrees, that "the precise boundaries of the constitutional prohibitions on prior restraints are not well defined." Catholic Leadership Coal. of Tex. v. Reisman, 764 F.3d 409, 437 (5th Cir. 2014). Accordingly, the Court

---

[15] The Court emphasizes that the only question before the Court is whether, under the Federal Rules of Civil Procedure, the plaintiff has pled sufficient facts to state a constitutional claim.

turns to Supreme Court precedent addressing prior restraints in an attempt to grapple with those shapeless boundaries.

"First, a scheme that places 'unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.'" FW/PBS, Inc., 493 U.S. at 225-26 (citations omitted); see also Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 769-70 (1988)(invalidating ordinance allowing mayor to grant or deny permit applications subject to terms and conditions that he deemed "necessary and reasonable" because it contained "no explicit limits on the mayor's discretion"); Shuttlesworth v. Birmingham, 394 U.S. 147, 150-52 (1969) (striking down ordinance authorizing City Commission to withhold permits "guided only by their own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience'").

In addition, the Supreme Court has held that three procedural safeguards are required to ensure that certain prior restraints are constitutional. Freedman v. Maryland, 380 U.S. 51, 57-59 (1965). In Freedman v. Maryland, the Court addressed the constitutionality of a state law requiring motion pictures to be licensed by a censorship board prior to their release. Id. at 51-54. Recognizing the inherent danger to constitutionally protected speech associated with this censorship system, the Court held that the statute's validity hinged upon the provision of three

"procedural safeguards," none of which were satisfied. Id. at 57-
60. Subsequently, in FW/PBS, Inc. v. City of Dallas, Justice
O'Connor, along with two other Justices, summarized the Freedman
safeguards as follows:

> (1) any restraint prior to judicial review can
> be imposed only for a specified brief period
> during which the status quo must be
> maintained; (2) expeditious judicial review of
> that decision must be available; and (3) the
> censor must bear the burden of going to court
> to suppress the speech and must bear the
> burden of proof once in court.

493 U.S. at 227.

More recently, in Thomas v. Chicago Park District, the Supreme
Court held that where a licensing scheme amounts to a content-
neutral time, place, and manner regulation, rather than subject-
matter censorship, the procedural safeguards set forth in Freedman
do not apply. 534 U.S. 316, 322 (2002). Nonetheless, the Thomas
Court held that content-neutral regulations still must "contain
adequate standards to guide the official's decision and render it
subject to effective judicial review." Id. at 323. The Court
then determined that the ordinance before it, which required a
permit before conducting an event involving more than fifty people,
passed constitutional muster under this test. Id. at 317-24. In
so holding, the Court reasoned that a permit could be denied only
for reasons specified in the ordinance, the licensing body was
required to process applications within twenty-eight days and

25

clearly explain its reasons for any denial, and the grounds for denial were "reasonably specific and objective," such that the decision was not left to the whim of the licensing authority. Id. at 324. The Court also noted that the ordinance's "narrowly drawn, reasonable and definite standards" were enforceable on review -- first by appeal to the head of the licensing authority and then by writ to state court. Id. Accordingly, the Thomas Court suggested that, even where a prior restraint is content-neutral, the existence of time limits for processing applications should be considered in determining whether the scheme vests the licensing official with "unduly broad discretion." See id. at 323-24.

Morris alleges that § 21.6.V requires a property owner to obtain a permit before installing artwork on the exterior of his property and therefore constitutes a prior restraint of speech. He further alleges that it amounts to an unconstitutional prior restraint because it leaves City officials with unfettered discretion to approve or deny an application. He adds that the CZO contains no standards relevant to the composition of an artistic mural and provides no timeline for the murals-permit application's approval.

The Court turns to the relevant provisions of the CZO to determine whether the plain language reveals that officials are left with unbridled discretion. As previously discussed, § 4.5E sets forth approval standards for the development plan and design

review process.[16]  In a nutshell, when determining whether to approve or deny a murals permit, City officials are tasked with

---

[16] Section 4.5E provides in part:

In reviewing site plan and design review applications, the relationship of the development plan to adopted land use policies and the goals and objectives of the Master Plan shall be evaluated. In addition, the following characteristics shall be considered:

1.  Degree of conformity with the regulations of this Ordinance.
2.  Degree of conformity with all applicable regulations within the City Code, and the goals and policies of the Master Plan.
3.  The location, arrangement, size, design, and general site compatibility of buildings, lighting, and signs, including:
    a.  Compatibility with, and mitigation of, any potential impact upon, adjacent property.
    b.  Site illumination designed and installed to minimize adverse impact on adjacent properties.
    c.  Signs in accordance with Article 24.
                    • • •
6.  Building design that enhances the design quality and character of the surrounding community through strategies such as:
    a.  Maintaining existing development patterns reflected in the intent of the Master Plan or other adopted plans, or reflecting changes proposed within the Master Plan or other adopted plans.
    b.  Providing a visible transition in height and bulk between higher and lower density development.
    c.  Reinforcing the prevailing orientation to the street.

considering whether the design "enhances the quality and character of the surrounding community," "strengthen[s] the character" of the streets and neighborhood, and "respect[s] historical design context." However, the CZO contains no standards regarding the compositional content of murals to guide officials in the decision-making process. Accordingly, the permitting-scheme vests City officials with discretion to grant or deny a permit based on their own ideas of what type of content "enhances the quality or character of the surrounding community." See Shuttlesworth, 394 U.S. at 150-52 (striking down ordinance authorizing City Commission to withhold permits "guided only by their own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience'"). Because the plaintiff has pled sufficient facts to support a finding that § 21.6.V vests officials with unbridled discretion to grant or deny a murals permit, he has stated a claim that the scheme constitutes an unconstitutional prior restraint, and the Court need not consider whether the regulation, at this stage of the case, provides for the Freedman procedural safeguards.

---

> d. Strengthening the character of walkable streets, intact residential neighborhoods, and other environments for which this prevailing character reflects the urban design goals of the Master Plan.
> e. Respecting historic design context.

V.

Next, the Court turns to whether Morris has pled sufficient facts to state a claim that § 21.6.V violates his due process rights.  Morris alleges that this section violates the Due Process Clause of the Fourteenth Amendment because it subjects artistic expression to prior review by unspecified officials using vague, overbroad, uncabined or nonexistent standards over an indefinite period of time, with no deadline for City review.  Again, in his opposition paper, Morris submits that an applicant "cannot know how the composition of his proposed mural will be assessed."  In substance, Morris' due process claim appears to amount to a void-for-vagueness challenge.

The Fourteenth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  The Supreme Court has consistently held that "[i]t is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined."  City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289-90 (1982) (citing Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)) (emphasis added).  The Supreme Court has also suggested that a law violates due process where its standards are "too vague to support the denial of an application for a license."  See id. at 293 ("We may assume that the definition of 'connections with criminal elements' in the city's ordinance is so

vague that a defendant could not be convicted of the offense of having such a connection; we may even assume, without deciding, that such a standard is also too vague to support the denial of an application for a license to operate an amusement center.").

In his complaint, Morris alleges that, according to the CZO, the "'design review process' is purportedly 'intended to promote orderly development and redevelopment in the City,' . . . and to assure that such development 'occurs in a manner that is harmonious with surrounding properties and neighborhood.'" He further alleges that "[t]he CZO's 'design review process' contains no standards relevant to the composition of an artistic mural nor any standards sufficiently specific to provide adequate notice to Plaintiff or other applicants." In so doing, Morris has plausibly alleged that the CZO's provisions regarding the permit application process are "too vague to support the denial of an application for a [murals permit]." See id. Accordingly, Morris has stated a claim that § 21.6.V is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment.

## VI.

Finally, the Court considers whether Morris has stated a claim that § 21.6.V violates equal protection. Morris alleges that the murals-permit scheme violates the Equal Protection Clause of the Fourteenth Amendment on its face because it allows artwork to be displayed by permit holders, but not by non-permit holders, and as

applied to him because the City has selectively enforced the law against him but not against other non-permit holders.

The Fourteenth Amendment provides that a State may not "deny any person within its jurisdiction the equal protection of the laws." Equal protection analysis is triggered when "challenged government action classifies or distinguishes between two or more relevant groups." Qutb v. Strauss, 11 F.3d 488, 492 (5th Cir. 1993). The nature of the right or classification involved determines which standard of review applies. Id. Where "a classification disadvantages a 'suspect class' or impinges upon a 'fundamental right,' the ordinance is subject to strict scrutiny." Id. Pursuant to this standard, an ordinance is constitutional only if "the classification promotes a compelling governmental interest and . . . the ordinance is narrowly tailored such that there are no less restrictive means available to effectuate the desired end." Id. (citations omitted). Accordingly, "[t]he Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives." Police Dep't of Chi. v. Mosley, 408 U.S. 92, 101 (1972) (citations omitted). Nonetheless, equal protection "does not take from the States all power of classification." Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 271 (1979) (citations omitted). In other words, "[w]hen the basic classification is rationally based,

uneven effects upon particular groups within a class are ordinarily of no constitutional concern." Id. (citations omitted).

In this case, § 21.6.V of the CZO distinguishes between permit holders and non-permit holders, allowing the former to install murals on the exterior walls of their property and precluding the latter from doing so. Accordingly, this statutory classification infringes upon the freedom of expression under the First Amendment and triggers strict scrutiny analysis. Because the Court has determined that Morris has adequately pled a claim that § 21.6.V constitutes an unconstitutional content-based regulation and prior restraint under the First Amendment, he has likewise pled a claim that this section's differential treatment of permit and non-permit holders violates the Equal Protection Clause of the Fourteenth Amendment on its face.

Morris also raises a "class of one" Equal Protection claim. To establish a "class of one" Equal Protection claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).

Morris alleges that the City has selectively enforced the murals permit requirement against him but not against other non-permit holders. To support this allegation, he notes that a mural was recently painted on the side of the Ogden Museum and that,

based upon information and belief, no permit has been issued, and the owner has not been cited for failing to obtain one. He also alleges that various City-owned buildings, including a fire station located on Girod Street, bear murals for which he believes neither permits, nor zoning violations, have been issued.

The City contends in its motion to dismiss that the two murals to which Morris points indeed participated in the City's review process. The City directs the Court to a Notice located on the City's website, indicating that the Historic District Landmarks Commission approved the mural located on the side of the Ogden Museum.[17] However, the plaintiff correctly notes in his opposition that, pursuant to § 21.6.V.1(b) of the CZO, Commission approval is only part of the permit scheme, as the Design Advisory Committee must also review the mural.[18] The plaintiff submits that he has

---

[17] "The Fifth Circuit has determined that courts may take judicial notice of governmental websites." In re Katrina Canal Breaches Consol. Litig., No. 05-4182, 2008 U.S. Dist. LEXIS 86538, at *271 (E.D. La. Sept. 8 2008) (citing Kitty Hawk Aircargo, Inc. v. Chao, 418 F.3d 452, 457 (5th Cir. 2005)). Because this Notice is located on a government website (https://onestopapp.nola.gov/Documents. aspx?ObjLabel=Permit&ID=737734), the Court may take judicial notice of it.

[18] Section 21.6.V.1(b) provides:

> Any structure within a local historic district or on a historically designated structure requires approval of the Historic District Landmarks Commission or Vieux Carré Commission prior to review by the Design Advisory Committee. If the Historic District Landmarks

alleged that the Ogden Museum's mural did not obtain such a permit, and the City has not shown otherwise. The Court agrees.

The City also contends in its motion to dismiss that the mural located on the Girod fire station obtained approval in accordance with the CZO, appealing and receiving ultimate approval from the City Planning Commission after the Executive Director initially denied the request. In an attempt to corroborate this contention, the City directs the Court to a City Planning Commission Staff Report located on a different City website. However, Morris correctly notes in his opposition paper that this Report only indicates that the Executive Director denied the fire station's mural application and that, on appeal to the City Planning Commission, the Commission also recommended denial. In response, the City contends in its reply paper that because the fire station is government property, the mural located thereon constitutes government speech, which is not subject to scrutiny under the First Amendment. See Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 467 (2009) ("[T]he Government's own speech . . . is exempt from First Amendment scrutiny." (citations omitted)).

This noisy point-counterpoint notwithstanding, the plaintiff has pled that he was perhaps treated differently from two non-

---

Commission or Vieux Carré Commission does not approve the mural, the mural is prohibited.

permit holders, but he has not pled that such differential treatment was "intentional." In other words, the plaintiff has not alleged that the City's decision to cite him for not having obtained a murals permit, as required by the CZO, was "irrational and wholly arbitrary." See Willowbrook, 528 U.S. at 565. Because the "intent" requirement is crucial to such a claim, the plaintiff has not stated a "class of one" Equal Protection claim under the Fourteenth Amendment.

Accordingly, it is ORDERED: that the plaintiff's motion to strike is GRANTED, and the defendant's motion to dismiss is GRANTED in part, as to the plaintiff's "class of one" Equal Protection claim under the Fourteenth Amendment, and DENIED in part, as to the plaintiff's claim that § 21.6.V constitutes an unconstitutional content-based regulation and prior restraint of speech in violation of the First Amendment, as well as to the plaintiff's Due Process claim and facial challenge under the Equal Protection Clause of the Fourteenth Amendment.

New Orleans, Louisiana, October 18, 2018

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE